

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA FELLERS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C.W. MARTIN LAW OFFICE, PLLC, a Texas corporation; CODY WOODS MARTIN, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:26-cv-900-GPC-JLB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER**<br><br>**[ECF No. 2]** |

Defendants C.W. Martin Law Office, PLLC and Cody Woods Martin (collectively, "Defendants") have submitted before this Court a motion to dismiss and, in the alternative, a motion to transfer. ECF No. 2. The motion has been fully briefed. ECF Nos. 4, 5. The Court finds the matters suitable for decision on the papers. For the reasons below, the Court DENIES Defendants' motion to dismiss or transfer.

/ / /

/ / /

/ / /

1

## FACTUAL BACKGROUND

Defendant C.W. Martin Law Office, PLLC is a Texas-based family law firm. ECF No. 1-2 ("Compl.") ¶ 9.[1] Defendant Cody Martin ("Martin") owns and operates the firm as managing partner and lead attorney. *Id*. Plaintiff and Martin formerly attended the same high school in Los Alamos, New Mexico and were originally simple acquaintances. *Id*. ¶ 10.

In July 2020, Martin contacted Plaintiff after learning Plaintiff had recently divorced. *Id*. Martin offered Plaintiff a position as a paralegal with his law firm, allowing her to work remotely from California. *Id*. Martin flew to California to conduct an initial training session at Plaintiff's home.[2] *Id*. ¶ 11. During the training visit, Martin offered to rub Plaintiff's feet, which Plaintiff declined. *Id*.

Plaintiff then began her employment with Defendants as a paralegal working remotely from San Diego County, California. *Id*. ¶ 12. Defendants misclassified her as a 1099 independent contractor throughout her employment. *Id*. ¶¶ 12, 29. With this misclassification, Defendants denied Plaintiff "legally mandated protections and compensation, including overtime pay for the substantial hours Plaintiff worked beyond forty hours per week." *Id*. ¶ 29.

Additionally, Defendants denied Plaintiff legally mandated meal and rest breaks. *Id*. ¶ 30. Defendants required her to remain available to answer the phone throughout her shift and through the lunch period. *Id*. If Plaintiff missed a phone call, she was harshly

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

[2] Defendants contest this fact, stating that Martin traveled to San Diego "with the possibility of exploring whether Plaintiff might reliably perform phone answering services." ECF No. 2-1 at 5. Defendants additionally state that "[n]o training occurred." *Id*.

3:26-cv-900-GPC-JLB

criticized by Martin. *Id*. Despite notifying Martin of her entitlement to lunch and bathroom breaks, Martin continued to require her to remain available at all times. *Id*. Martin also did not pay overtime wages for this time. *Id*. Martin justified this lack of breaks and overtime wages based on Plaintiff's classification as a 1099 contractor. *Id*.

Between July 2020 and July 2023, Plaintiff "experienced multiple cycles of termination and rehiring" by Martin. *Id*. ¶ 15. Martin would terminate Plaintiff without notice, usually citing financial difficulties or unspecified business reasons, but would usually rehire her two or three months later. *Id*. During these earlier employment periods, Martin began engaging in inappropriate inquiries into Plaintiff's sex life and personal relationships. *Id*. At the same time, this pattern of termination and rehiring "left Plaintiff in a vulnerable financial position in which she became increasingly dependent on returning to work for Defendants." *Id*.

Around Thanksgiving in 2023, Martin rehired Plaintiff after firing her in July 2023. *Id*. ¶ 16. Martin escalated his sexual harassment after this rehiring. Specifically, in December 2023, Martin "sent Plaintiff an explicit photograph via text message depicting his erect penis with his hand on it in a masturbatory pose." *Id*. ¶ 17. Martin initially claimed the photo was sent by accident but then promptly asked Plaintiff, "well, what do you think?" *Id*. Plaintiff attempted to deflect while preserving her employment and replied: "it looks like it works." *Id*. Martin then demanded a picture in return. *Id*. Plaintiff, fearful of losing her job, sent a photograph of herself in a bikini that was already posted on her Facebook page. *Id*. Martin responded to this photograph with: "come on, you can do better." *Id*.

Within this same employment period, Martin messaged the firm's group text chat, accusing Plaintiff of missing phone calls. *Id*. ¶ 18. Plaintiff privately messaged Martin, explaining she had been experiencing stomach issues. *Id*. Martin responded to the message, stating "why don't I just fly you out here and I'll fuck it out of you." *Id*.

Plaintiff did not reply to that message, which led to Martin becoming "hostile and retaliatory." *Id*.

On January 29, 2024, Martin once again terminated Plaintiff's employment, which Plaintiff alleges was "in retaliation for her resistance to his sexual advances." *Id*. ¶ 19. When Plaintiff learned of the termination, Martin claimed she had been let go because of financial struggles. *Id*.

In March 2024, Martin again contacted Plaintiff, proposing to rehire her. *Id*. ¶ 20. Plaintiff only agreed after securing a promise from Martin that she would have at least one year of guaranteed employment. *Id*. Martin also proposed flying Plaintiff to Fort Worth, Texas for a business meeting and training session. *Id*. Because she had previously had a positive experience with a professional trip in June 2022, Plaintiff agreed. *Id*.

For the trip, Plaintiff was informed she would be staying at a condominium near the office. *Id*. ¶ 21. However, upon her arrival, Plaintiff discovered Martin was staying in the same unit "and felt trapped without alternative arrangements." *Id*. After her entrance, Martin "displayed various sexual devices and paraphernalia on the kitchen table, including a bondage restraint apparatus designed to lock a person's ankles and wrists in place while bent over, boots, lingerie, and a large dildo," and asked Plaintiff whether she was limber enough for the restraint apparatus. *Id*. ¶ 22. Martin also informed Plaintiff that he was separated from his wife, getting divorced, and had been spending $300 per night on prostitutes. *Id*. Despite the display and questions, Plaintiff attempted to redirect the encounter towards legitimate business purposes. *Id*. ¶ 23. She made clear she was in Fort Worth for work-related reasons only and had no interest in any sexual or romantic interactions. *Id*. He eventually returned to business discussions and promised he would sleep in his own room and not bother her. *Id*.

However, later that night, Martin entered her room while she was asleep. *Id*. ¶ 24. Plaintiff awoke to "Martin's erect penis pressed firmly against her body." *Id*. She felt

4

paralyzed by her fear and was unsure what might happen if she resisted or confronted him. *Id*. Instead, she pretended to remain asleep, hoping he would stop and leave. *Id*. He did not leave and, instead, "proceeded to penetrate Plaintiff without her consent, while she lay frozen in terror, unable to cry out or escape." *Id*.

The next morning, Plaintiff took a shower in the bathroom attached to her private room with the door closed. *Id*. ¶ 25. Martin, without warning or invitation, "opened the bathroom door, entered while holding a large dildo, and got into the shower with Plaintiff." *Id*. She was unable to escape or prevent the intrusion. *Id*.

After returning to California, Martin requested Plaintiff return to Texas for another trip. *Id*. ¶ 27. Plaintiff refused. *Id*. After the refusal, Martin began publicly humiliating Plaintiff by sending demeaning messages to the firm's group chat, which included attorneys and paralegals. *See id*. In early July 2024, Martin terminated Plaintiff's employment. *Id*. ¶ 28.

## PROCEDURAL HISTORY

On December 26, 2025, Plaintiff filed a complaint at the Superior Court of the State of California for the County of San Diego. Compl. at 3. The complaint alleges eleven causes of action: (1) sexual harassment, California Gov't Code § 12940(j); (2) sex/gender discrimination, California Gov't Code § 12940(a); (3) retaliation, California Gov't Code § 12940(h); (4) failure to prevent harassment and discrimination, California Gov't Code § 12940(k); (5) wrongful termination; (6) intentional infliction of emotional distress; (7) unpaid overtime, Cal. Labor Code §§ 510, 558, 558.1, 1198; (8) unpaid meal period premiums, Cal. Labor Code §§ 226.7, 512(A); (9) unpaid rest period premiums, Cal. Labor Code § 226.7; (10) final wages not timely paid, Cal. Labor Code §§ 201, 202, 203, 558, 558.1; and (11) failure to provide accurate wage statements, Cal. Labor Code § 226(A). *Id*. ¶¶ 31-125.

3:26-cv-900-GPC-JLB

On February 12, 2026, Defendants removed the case to this Court. ECF No. 1. On February 19, 2026, Defendants filed their motion to dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6) or, in the alternative, to transfer. ECF No. 2. On March 17, 2026, Plaintiff filed her opposition. ECF No. 4. On April 3, 2026, Defendants filed their reply. ECF No. 5.

## LEGAL STANDARD

### I.    Motion to Dismiss: Rule 12(b)(2)

Rule 12(b)(2) allows a court to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(6). The plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995)). "[U]ncontroverted allegations in plaintiff's complaint must be taken as true," but courts "may not assume the truth of allegations in a pleading which are controverted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up). Any "factual disputes" must be "resolve[d] ... in the plaintiff's favor." *Id.*

To establish personal jurisdiction, a party must show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction would be consistent with federal due process requirements. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Because California's long-arm statute reaches the outer limits of federal constitutional due process, courts in California need only assess constitutional principles of due process when determining personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

6

Due process requires that a non-resident defendant have minimum contacts with the forum such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts can give rise to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." *Id.*

## II.     Motion to Dismiss: Rule 12(b)(3)

Rule 12(b)(3) allows a court to dismiss a complaint for improper venue. Fed. R. Civ. P. 12(b)(3). A "[p]laintiff has the burden of showing that venue was properly laid in [the district in which the plaintiff filed]." *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

The general venue provision, Section 1391(b) of Title 28 of the U.S. Code, provides in pertinent part that a "civil action may be brought in–(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b); *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986).  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought."  28

3:26-cv-900-GPC-JLB

U.S.C. § 1406(a).  The decision of whether to dismiss a case or transfer it is within the district court's discretion.  *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### III.    Motion to Dismiss: Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), backed by sufficient facts that make the claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Rather, it requires enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In reviewing the plausibility of a complaint, courts must "accept all [factual] allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020) (quoting *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013)).  But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023).  Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged

8

pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

**IV.     Motion to Transfer**

28 U.S.C. § 1404(a) permits a federal court to transfer a case to another federal court "where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). The district court has broad discretion to determine whether to transfer, *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1212 (S.D. Cal. 2013), but a transfer is inappropriate where it would "merely shift rather than eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  The Court must make "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).  The party moving for transfer bears the burden of demonstrating that the transfer furthers the convenience of the parties and witnesses and the interests of justice.  *Hawkins*, 924 F. Supp. 2d at 1212.

<strong>DISCUSSION</strong>

Defendants move to dismiss. ECF No. 2-1 ("Mot.") at 6-15. Defendants also move to transfer in the alternative. *Id*. at 16.

**I.     Motion to Dismiss**

Defendants argue that the case should be dismissed for lack of personal jurisdiction, for improper venue, and for failure to state a claim as to causes of action 1-6. The Court considers each argument in turn.

/ / /

/ / /

/ / /

/ / /

### a. Lack of Personal Jurisdiction

Specific jurisdiction[3] requires "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alterations and quotations omitted).

### i. Purposeful Availment

While the shorthand "purposeful availment" is often used, the first prong includes both purposeful availment and purposeful direction—two distinct concepts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Purposeful availment is most often used in contract cases and requires "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state," including evidence of defendant's actions in the forum (i.e., executing or performing a contract). *Id*. Purposeful direction is most often used in tort cases and requires "[a] showing that a defendant purposefully directed his conduct toward a forum state," even if the actions originated outside of the forum state (i.e., distribution of an item that originated in another state). *Id*. Specifically, "[p]urposeful direction 'requires that the defendant ... have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

---

[3] The parties do not dispute that the Court lacks general personal jurisdiction over Defendants. Mot. at 7.

As the first six claims involve torts, the Court will evaluate them using the purposeful direction test. *See Franey v. Am. Battery Sols. Inc.*, No. 22-CV-03457-LB, 2022 WL 4280638, at *7 (N.D. Cal. Sept. 15, 2022) (collecting cases) ("Courts apply the purposeful-direction test to torts, including workplace-harassment, gender-discrimination, and retaliation claims, fraud, and infringement of the right of publicity."). In terms of the latter five wage-and-hour claims, courts have used both tests; thus, this court will use the purposeful direction test for these claims as well. *Id.*; *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1025 (N.D. Cal. 2015); *Holliday v. Lifestyle Lift, Inc.*, No. 09-CV-4995-RS, 2010 WL 3910143, at *3-4 (N.D. Cal. Oct. 5, 2010).

**Intentional Act**. Defendants hired, employed, allegedly discriminated, and terminated Plaintiff. Defendants also allegedly did not pay overtime wages and denied Plaintiff meal and rest breaks as a matter of policy. Compl. ¶¶ 29-30. These are all intentional acts. *See Mercado v. JMJ Assocs. LLC*, No. 14-CV-2060-JLS (RNBX), 2015 WL 13783452, at *4 (C.D. Cal. Apr. 15, 2015) ("Mercado's hiring, employment, alleged discrimination, and termination are intentional acts."); *Franey*, 2022 WL 4280638, at *7; *Senne*, 105 F. Supp. 3d at 1025 ("Typically, the adoption of a uniform policy regarding the payment (or nonpayment) of wages satisfies the first prong of the effects test, the intentional act requirement."); *Enriquez v. Interstate Grp., LLC*, No. 11-CV-05155 YGR, 2012 WL 3800801, at *4 (N.D. Cal. Aug. 31, 2012) ("[T]he policy decision to deny overtime compensation satisfies the intentional act prong.").

**Aimed at Forum State**. This requirement is satisfied where "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002) (internal citation and quotation signals omitted).

Here, Martin contacted Plaintiff, a resident of California, about a position as a paralegal in July 2020, knowing she lived and would need to work remotely in California.

11

Compl. ¶ 10. Martin flew to California either to train Plaintiff, *id*. ¶ 11, or to, at least, "explor[e] whether Plaintiff might reliably perform phone answering services." Mot. at 5. Martin hired Plaintiff while she was in California, and Plaintiff primarily worked from California throughout her employment. ECF No. 4 ("Opp.") at 14. Defendants communicated with Plaintiff via e-mail, text, and phone over the course of her employment. *See* Compl. ¶¶ 12, 18; Mot., Ex. E. Defendants issued a W-9 form to Plaintiff in California and made payments to Plaintiff in California. Opp. at 14. Defendants also shipped Plaintiff the necessary physical equipment for her work to California. *Id*. at 15; *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 887 (N.D. Cal. 2024) ("Several courts have found personal jurisdiction when an employer supports or facilitates its employees' remote work in a forum state…"). Defendant allegedly subjected Plaintiff to sexual harassment while she was California and allegedly retaliated against her while she was in California based on her refusal to engage with Martin's sexual harassment. Compl. ¶¶ 17-19. Accordingly, the intentional acts are aimed at the forum state requirement, meeting this requirement. *See Alexis v. Rogers*, No. 15-CV-691-CAB-BLM, 2016 WL 11707630, at *6-7 (S.D. Cal. Feb. 26, 2016); *Mercado v. JMJ Assocs. LLC*, No. 14-CV-2060-JLS (RNBX), 2015 WL 13783452, at *4 (C.D. Cal. Apr. 15, 2015); *Franey v. Am. Battery Sols. Inc.*, No. 22-CV-03457-LB, 2022 WL 4280638, at *7 (N.D. Cal. Sept. 15, 2022); *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1216 (C.D. Cal. 2020).

**Harm Suffered in Forum State**. Finally, the third element is similarly satisfied. The foreseeable harm "element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc)). "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter than even more harm might have

3:26-cv-900-GPC-JLB

been suffered in another state." *Yahoo*!, 433 F.3d at 1207. Additionally, "[w]hen an employer knows its employee is performing work in the forum, typically this requirement is satisfied." *Franey*, 2022 WL 4280638, at *9.

Here, it was foreseeable to Defendants that Plaintiff would suffer harm in California based on their forum-related contacts. They hired her, employed her, and paid her in California. By applying the allegedly unlawful overtime policies here in California, Defendants would reasonably have known that a California employee would be harmed. Additionally, the alleged sexual assault and harassment, discrimination, and wrongful termination all stemmed from Defendants' employment of Plaintiff; and Plaintiff performed most of that work in California. Therefore, it was foreseeable to Defendants that the harm resulting from these intentional acts would occur in California.

Accordingly, for the reasons set forth above, the purposeful direction requirement is satisfied.

### ii.  Arising From Defendant's Activities

The second requirement for specific personal jurisdiction is that the plaintiff's claim "arises out of or relates to the defendant's forum-related activities." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F.*, 582 U.S. 255, 262 (2017)). "The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). "[R]elatedness requires a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023).

For the reasons discussed in the previous section, the defendants' forum contacts satisfy this element. Here, Defendants' forum-related activities included employing Plaintiff, allowing her to work from home, maintaining this connection to California throughout her employment, and, finally, terminating Plaintiff. Defendants' contacts with

3:26-cv-900-GPC-JLB

California resulted from the employment relationship with Plaintiff, and Plaintiff's claims arise out of that relationship. The harassment and retaliation claims are directly linked to Plaintiff's employment with Defendants, and the wage-and-hour claims stem from Defendant's own policies. "But for" these policies and "but for" the employment relationship, Plaintiff would not have suffered these alleged injuries. *See Alexis v. Rogers*, No. 15-CV-691-CAB-BLM, 2016 WL 11707630, at *10 (S.D. Cal. Feb. 26, 2016); *Enriquez v. Interstate Grp., LLC*, No. 11-CV-05155-YGR, 2012 WL 3800801, at *5 (N.D. Cal. Aug. 31, 2012). Thus, the second requirement is met.

### iii.  Reasonableness

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1132 (9th Cir.2003) (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 477 (1985) (internal quotations omitted). It is not enough that Defendants "demonstrate that some other forum is more reasonable than California, it must show a due process violation; it must show that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'" *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

To determine whether the exercise of jurisdiction is reasonable and comports with fair play and substantial justice, courts consider seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

14

plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 761 (9th Cir. 2025).

Defendants argue that all but the sixth factor weigh in their favor. Mot. at 14. Plaintiff, in turn, argues all factors weigh in her favor. Opp. at 22. Given the Defendants concede that the sixth factor weighs in favor of Plaintiff, the Court will consider the remaining six factors.

**Purposeful Injection**. The analysis of this factor "parallels the question of minimum contacts" in determining the reasonableness of an exercise of specific jurisdiction. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.,* 1 F.3d 848, 852 (9th Cir.1993); *see also Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir.1991) ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong would be redundant"); *Franey v. Am. Battery Sols. Inc.*, No. 22-CV-03457-LB, 2022 WL 4280638, at *7 (N.D. Cal. Sept. 15, 2022) ("Because the defendants have purposefully availed themselves of California by employing two employees in the state and pursuing business in California, the first factor weighs in favor of the plaintiff.").

As discussed above, Defendants have had purposeful contact with Plaintiff in California, arising from their employment relationship. Thus, the first factor weighs in Plaintiff's favor.

**Burden on Defendant**. For the Court's exercise of jurisdiction to be unreasonable, the burden of defending in California must be "so gravely difficult and inconvenient" that it violates due process. *See Burger King*, 471 U.S. at 485. This factor also must be considered in relation to the corresponding burden on the plaintiff. *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988).

Here, Defendants are located in Texas, 1,500 miles away. Mot. at 14. Martin is also a solo practitioner and has no partners available to cover his law practice. *Id*. For him and for the firm, litigating in California would be more burdensome than litigating in

15

Texas. At the same time, "the availability of technology permitting remote depositions militates against affording this factor substantial weight." *Franey*, 2022 WL 4280638, at *10; *see Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007). While Defendants will be burdened by the distance to this Court, they have not shown that the burden is so gravely difficult and inconvenient as to violate due process. Thus, this factor weighs in favor of Plaintiff.

**Conflict with Texas' Sovereignty**. As for the third factor, "[t]he conflict with the sovereignty of the defendant's state is not a very significant factor in cases involving only U.S. citizens; conflicting policies between states are settled through choice of law analysis, not through loss of jurisdiction." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1076 n.5 (9th Cir. 1986). Defendants are citizens of Texas. Thus, Texas' sovereignty would not be significantly impaired by allowing the action to proceed here.

**California's Interest in Adjudication**. "California has a strong interest in providing a forum for its residents and citizens who are tortiously injured" within the state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115-16 (9th Cir. 2002); *see Enriquez v. Interstate Grp., LLC*, No. 11-CV-05155-YGR, 2012 WL 3800801, at *7 (N.D. Cal. Aug. 31, 2012) ("California has a strong interest in adjudicating this matter because the injuries alleged occurred here in California and Plaintiffs are residents of California."). Here, Plaintiff resides in California, and the injury—at least in part—occurred here. Thus, the fourth factor favors Plaintiff.

**Efficient Resolution**. For the fifth factor, courts have "looked primarily at where the witnesses and the evidence are likely to be located." *CoreVent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1489 (9th Cir.1993). However, this factor is "no longer weighed heavily given the modern advances in communication and transportation." *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (quoting *Panavision International v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir.1998)).

16

Defendants claim all evidence is located in Fort Worth. Mot. at 16. Defendants also claim all witnesses are in Fort Worth but have not identified witnesses beyond the parties themselves. *Id*. In contrast, Plaintiff has vaguely identified herself, mental or physical health professionals that treated her, and her children as witnesses. Opp. at 29. Given the above, this factor is neutral. *See Menken v. Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007) ("Because witnesses are located in both Nevada and in Arizona, neither forum has a clear efficiency advantage with respect to witnesses…On balance, this factor is neutral.").

**Alternative Forum**. This factor considers whether an alternative forum is available if the Court were to dismiss. Here, the Defendants could be sued in Texas. Thus, this factor weighs in favor of Defendants.

**Balancing the Factors**. Five factors weigh in favor of Plaintiff or are neutral, while only one factor weighs in favor of Defendants. Thus, the Court concludes that the Court's exercise of jurisdiction would not be unreasonable.

### b. Improper Venue

Defendant argues that venue is improper under 28 U.S.C. § 1391 because Defendants do not reside in California and no substantial part of the alleged events occurred in California. Mot. at 14. Plaintiff, however, maintains that Defendants waived their venue challenge under § 1391 when the action was removed to this District. Opp. at 23. Plaintiff also contends (1) that Plaintiff should be estopped from challenging venue based on previous representations and (2) that venue is proper under § 1391 because the harassment and wage violations were received and experienced in this District. *Id*. at 24.

28 U.S.C. § 1391 is the general venue statute and limits where a civil action may be brought. *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953). However, where an action is removed to federal court, § 1391 no longer applies. *Id*.; *Skillnet Sols., Inc. v. Ent. Publications, LLC*, No. 11-CV-4865-PSG, 2012 WL 692412, at *4 (N.D. Cal. Mar. 2,

3:26-cv-900-GPC-JLB

2012); *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1013 (N.D. Cal. 2000). Instead, the case is subject to 28 U.S.C. § 1441 venue requirements. Thus, because Defendants removed the case to this Court, Defendants' § 1391 challenge of improper venue fails.

Additionally, under Section 1441(a), venue is proper in the judicial district encompassing the state court where action was brought. 28 U.S.C. § 1441. Since the Southern District of California encompasses San Diego County, removal to this Court complies with the federal venue requirement.

### c. Failure to State a Claim: Causes 1-6

Defendants contend that Plaintiff's FEHA and tort claims fail for extraterritoriality, arguing that all relevant conduct occurred wholly outside of California. Mot. at 15. Plaintiff maintains that she performed her work within California's borders and was subjected to harassment and discrimination during her work, allowing California law to apply to her claims. Opp. at 27.

The exterritoriality principle that Defendants invoke is the judicial presumption that the state legislature does not intend its statutes to apply to conduct or transactions beyond the state's borders. *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1059 (1999). Unless the state legislature makes its intention express, California courts will presume that the statutes are not intended to have extraterritorial effect. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

As discussed in previous sections, Plaintiff resides and worked for Defendants in California, and the injury—at least in part—occurred here. She allegedly was harassed in California and was terminated while working in California. Thus, Defendants' sole argument against the first six causes of action fail at this stage.

///

///

## II.    Motion to Transfer

To resolve motions to transfer venue, district courts employ a two-step framework. First, the court evaluates "whether the plaintiff could have originally brought the action in the proposed transferee forum." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1041 (S.D. Cal. 2023) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). Second, the court must assess convenience and fairness, weighing several case-specific factors. *Id*.

Defendants argue that venue should be transferred to the Northern District of Texas, Fort Worth Division because (1) venue is proper there and (2) transfer serves the interests of justice. Mot. at 16. Plaintiff does not argue that venue is improper in the Northern District of Texas but maintains that none of the convenience and fairness factors weigh in favor of transfer. Opp. at 28.

### a.    Availability of an Alternative Forum

Section 1404(a) permits transfer only to a district "where [the action] might have been brought." 28 U.S.C. § 1404(a). "The phrase where an action 'could have been brought' is interpreted to mean that the proposed transferee court would have subject matter jurisdiction, proper venue, and personal jurisdiction." *Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, No. 12-CV-911-IEG-WMC, 2012 WL 2068728, at *2 (S.D. Cal. June 8, 2012).

<u>Subject Matter Jurisdiction</u>. There is diversity jurisdiction where (1) there is complete diversity of citizenship between the parties (i.e., all persons on one side of the controversy are citizens of different states from all persons on the other side) and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. A corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business. *See Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010).

Here, Defendants are citizens of Texas, Compl. ¶¶ 2-3, while Plaintiff is a citizen of California, *id*. ¶ 1. The amount in controversy also exceeds $75,000. *See* ECF No. 1 at

19

3-4; 28 U.S.C. § 1446(c)(2)(A)(ii). Thus, based on the pleadings, the federal court in the Northern District of Texas has subject matter jurisdiction.

Personal Jurisdiction. The courts in Texas also have personal jurisdiction over this matter. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, general jurisdiction exists at its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011))). Here, Martin is domiciled in Texas, while the Defendant C.W. Martin Law Office, PLLC's place of incorporation and principal place of business sits in Texas. Thus, the Texas courts have personal jurisdiction over the case.

Venue. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Because Defendants resides in the Northern District of Texas, venue is proper there.

Thus, the first element is met.

### b. Convenience and Fairness Factors

Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Thus, "[a] motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). To succeed, defendants "must show that the balance of conveniences

3:26-cv-900-GPC-JLB

weighs heavily in favor of transfer in order to overcome the strong presumption in favor of plaintiff's choice of forum." *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011); *see Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

The factors district courts typically weigh include: (1) the plaintiff's choice of forum, (2) the convenience of parties, (3) the convenience of witnesses, (4) local interests in the controversy, (5) ease of access to evidence, (6) costs of litigation, (7) familiarity with the applicable law, and (8) judicial economy. *See, e.g.*, *Decker*, 805 F.2d at 843; *Greenley v. Kochava*, Inc., 684 F. Supp. 3d 1024, 1042 (S.D. Cal. 2023); *Jones*, 211 F.3d at 498-99.

### i.  Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is accorded great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002) ("There is a strong presumption in favor of the plaintiff's choice of forum."). If given that weight, a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843.

To determine the amount of deference, "courts must consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action." *Hendricks v. StarKist Co.*, No. 13-CV-729-YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014). Minimal deference would only be given "if the operative facts had not occurred within the forum and the forum had no interest in the parties or subject matter." *Id*. However, where there is no evidence of forum shopping and both parties have significant contacts with the current district, the plaintiff's choice of forum carries significant weight. *Roling v. E\*Trade Sec., LLC,* 756 F.Supp.2d 1179, 1186 (N.D.Cal.2010).

Here, Plaintiff chose to bring the case in San Diego County, which this District encompasses. As discussed above, both parties have contacts with this District, and no evidence has been presented for forum shopping. Thus, the plaintiff's choice of forum is entitled to substantial weight.

### ii. Convenience of Parties

"Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). Transfer "should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, *9 (N.D. Cal. Feb. 14, 2011) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

Defendant argues that the Northern District of Texas would be more convenient for the parties because "Martin is a solo practitioner for whom California litigation is extraordinarily burdensome" and "[a]ll the alleged in-person encounters arising from sexual harassment, assault, and termination occurred in Fort Worth." Mot. at 16.

However, while transfer to Texas would be more convenient for Defendants, it would inconvenience Plaintiff who would be required to travel for litigation in that forum and find arrangements for her three children. *See* Opp. at 29. This simply shifts the inconvenience of litigation. Thus, this factor weighs in favor of neither party.

### iii. Convenience of Witnesses

"The convenience of witnesses is often the most important factor considered by the court when deciding a motion to transfer for convenience." *Kannar v. Alticor, Inc.*, No. 08-CV-5505, 2009 WL 975426, at *2 (N.D.Cal. Apr. 9, 2009). However, "not all witnesses are treated equal." *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1043 (S.D. Cal. 2023). "[P]rimary consideration is given to third part[ies], as opposed to employee witnesses." *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D.

3:26-cv-900-GPC-JLB

Cal. 2013) (quoting *Kannar*, 2009 WL 975426, at *2). Less consideration is given to the convenience of "party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (citing *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1132 (C.D. Cal. 2009)).

When evaluating witness convenience, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *United States ex rel. Tutanes-Luster v. Broker Sols.*, Inc., No. 17-CV-04384-JST, 2019 WL 1024962, at *5 (N.D. Cal. Mar. 4, 2019) (citation omitted); *see Greenley*, 684 F. Supp. 3d at 1043. "In establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.Supp.2d 1183, 1193 (S.D.Cal.2007).

Here, Defendants only state that "[a]ll witnesses are in Texas and cannot be compelled to testify in California." Mot. at 16. No other identifying information is provided. Though the Court acknowledges the contention that some witnesses would be within Texas, the Court is unable to determine if they are third-party witnesses or employee witnesses and thus unable to evaluate witness convenience. In contrast, Plaintiff has identified herself as a witness and has made reference to her children and medical or mental health professionals who treated her as potential witnesses. Opp. at 29. While this identification also lacks details, this is more information than Defendants provide. Thus, the Court finds this factor weighs slightly against transfer.

### iv. Local Interest in the Controversy

"[T]his factor takes into account the current and transferee forum's interest 'in having localized controversies decided at home.'" *Hangzhou Chic Intelligent Tech. Co. v. Swagway*, LLC, No. 16-CV-04804-HSG, 2017 WL 1425915, at *4 (N.D. Cal. Apr. 21,

23

2017) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

When applying this factor, courts have varied in their approach. Some courts have found great local interest in California applying California law and disfavored transfer. *See, e.g.*, *Greenley*, 684 F. Supp. 3d at 1044-45; *Van Slyke v. Cap. One Bank*, 503 F. Supp. 2d 1353, 1365 (N.D. Cal. 2007). Some courts have found comparable interests in both states and determined the factor was rendered neutral. *See, e.g.*, *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1043 (N.D. Cal. 2020) ("North Carolina has as much interest in regulating the conduct of one of its corporations as California does in protecting its residents."). The remainder of courts find California's interest in applying its law outweighed if the focus of the case rests in another jurisdiction and favor transfer. *See, e.g.*, *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216-17 (S.D. Cal. 2013); *Romoff v. Johnson & Johnson Consumer Inc.*, No. 22-CV-75-LL-WVG, 2022 WL 3905301, at *6 (S.D. Cal. Aug. 26, 2022).

The Court agrees with the first approach. Texas might have an interest in regulating its corporations and citizens, but that regulation can also occur under its own laws or national laws. This instant case brings claims mostly under California law. Specifically, nine out of the eleven causes of actions arise from California law, and none of the causes arise out of Texas law. Opp. at 29. There is great local interest in this case, and thus, this factor does not favor transfer.

### v. Ease of Access to Evidence

"As other courts have noted, the 'ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations.'" *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (citing *Szegedy v. Keystone Food Prods., Inc.*, No. 08-CV-5369-CAS(FFMX), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009)). Though

3:26-cv-900-GPC-JLB

Defendants contend that "[a]ll evidence, business records, and files are in Fort Worth," much of those records and files will likely be accessible electronically. Thus, this factor only slightly favors transfer.

### vi.  Costs of Litigation

Typically, "litigation costs are reduced when venue is located near the most witnesses expected to testify and—notwithstanding developments in electronic conveyance—when [ ] the venue is in the district in which most of the documentary evidence is stored." *Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-CV-06411-CAS-FFM, 2017 WL 1434265, at *5 (C.D. Cal. Apr. 21, 2017) (quotations omitted) (quoting *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013)).

At the same time, "[a] court may also consider the relative means of the parties in deciding a transfer motion," though the consideration is not entitled to great weight. *Hendricks v. StarKist Co.*, No. 13-CV-729-YGR, 2014 WL 1245880, at *5 (N.D. Cal. Mar. 25, 2014) (quoting *Dwyer v. Gen. Motors Corp.*, 853 F.Supp. 690, 693–94 (S.D.N.Y.1994)); *see also Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008). Under this umbrella, "corporations are better-equipped than individuals to absorb increased litigation costs." *Shultz v. Hyatt Vacation Mktg. Corp.*, No. 10-CV-04568-LHK, 2011 WL 768735, at *6 (N.D. Cal. Feb. 28, 2011). Accordingly, given their means, corporations usually must show a substantially heavier financial inconvenience than non-corporation parties might.

Here, Defendants include a law firm that is likely better equipped to absorb increased litigation costs. Defendants do not provide any arguments to the contrary. Defendants have also not identified any witnesses but does claim that documentary evidence is located in Fort Worth. Thus, on balance, this factor is neutral.

/ / /

/ / /

25

### vii.  Familiarity with the Applicable Law

Although it is true that federal courts are equipped and competent to apply California law, "[a] California district court is more familiar with California law than district courts in other states." *In re Ferrero Litig.*, 768 F. Supp 2d 1074, 1081 (S.D. Cal. 2011); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1143 (S.D. Cal. 2023); *Cardoza v. T-Mobile USA Inc.*, No. 08-5120 SC, 2009 WL 723843, at *5 (N.D. Cal. Mar. 18, 2009). Thus, this factor weighs slightly against transfer.

### viii.  Judicial Economy

"The main countervailing weight against transfer is judicial economy." *Greenley*, 684 F. Supp. 3d at1045. "[T]he pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 386–87 (9th Cir.1974) (citations omitted).

This factor is not relevant to this case as no alternative actions in another district have been presented.

### ix.  Balancing of Factors

In sum, most factors weigh against transfer or are neutral. As such, Defendants have not established that the Northern District of Texas is the more appropriate forum.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendants' motion to dismiss and Defendants' motion to transfer. The hearing set on May 8, 2026 shall be VACATED.

**IT IS SO ORDERED.**

Dated: May 1, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26

3:26-cv-900-GPC-JLB